UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STEVEN LOJEK,

Plaintiff,

v.

HENAN OCEAN POWER
HOUSEWARES CO. LTD., et al.,

Defendants.

Case No. C25-2449-SKV

ORDER RE:  PENDING MOTIONS

Plaintiff Steven Lojek, who proceeds pro se in this patent infringement action, filed a Motion to Seal Exhibits to the Complaint, Dkt. 4, and Motion for Leave to Serve Defendants by Alternative Means Under Rule 4(f)(3), Dkt. 5.  Having considered the motions, and the balance of the record, the Court herein DENIES the motion for leave to serve by alternative means, Dkt. 5, and GRANTS in part and DENIES in part the motion to seal, Dkt. 4.

BACKGROUND

Plaintiff brings patent infringement claims against Defendants Henan Ocean Power Housewares Co., Ltd, Henan Dongzhi Value Trading Co., Ltd., Fugu County Northwest Star Trading Co., Ltd., Fugu County Yongle Grain & Oil Purchasing and Marketing Co., Ltd., Shanghai Kangkeduo Sports Goods Co., Ltd., Yiwu Weihe Sports Goods Co., Ltd., Bengbu

ORDER RE:  PENDING MOTIONS - 1

Qiangshi Sports Goods Co., Ltd., Rizhao Fangbu Fitness Equipment Co., Ltd., and Yiwu Feide Sports Goods Co., Ltd. *See* Dkt. 1 at 2-3. He alleges each named Defendant is located in China and actively conducts business with customers in the United States through Amazon.com and/or Alibaba.com, and that those sales include direct offers to sell and ship infringing weight-stack pin products. *See generally* Dkt. 1.

Plaintiff seeks to serve Defendants by e-mail. *See* Dkt. 5. He provides registered addresses and contact information for each Defendant, including both physical and email addresses, that Plaintiff identified through "State Administration for Market Regulation (SAMR) records, Qichacha Records, United States Patent and Trademark Office (USPTO) records, third party verification methods for identification of Alibaba Sellers, Amazon seller business profiles, Alibaba seller business profiles, Amazon seller messaging, and Alibaba seller messaging[.]" Dkt. 5 at 3; *see also* Dkts. 1-2, Exs. B-F, K.

Plaintiff also seeks leave to file under seal certain exhibits attached to his Complaint. *See* Dkt. 4. Per Plaintiff, those exhibits include: (1) personally identifiable information and sensitive foreign contact data for the named Defendants, including email addresses, phone numbers, Unified Social Credit Codes, Qichacha reports, and SAMR registration documents that contain non-public corporate details and government-issued identification numbers; (2) "[i]nternal teardown photographs, proprietary engineering views, and detailed claim-chart analyses revealing confidential product architecture and litigation strategy[;]" (3) private communications with Defendants obtained through email, Alibaba chats, and Amazon messaging tools which include non-public email addresses, chat history, and communications; and (4) non-public USPTO account information, trademark-correspondence email addresses, and application information tied to particular sellers." *Id*. at 2.

ORDER RE: PENDING MOTIONS - 2

DISCUSSION

A.     Motion for Alternative Service

Federal Rule of Civil Procedure 4(h)(2) authorizes service of process on a foreign business entity in the manner prescribed by Rule 4(f). *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). Rule 4(f) permits service by: (1) "internationally agreed means of service . . . reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" (hereinafter "Hague Convention"); (2) if there is no internationally agreed means, in accordance with the foreign country's law; or (3) "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f).

While Rule 4(f) does not favor any service methods, it does "prohibit[ courts] from issuing a Rule 4(f)(3) order in contravention of an international agreement, including the Hague Convention referenced in Rule 4(f)(1)." *Rio Props., Inc.*, 284 F.3d at 1015 & n.4. Absent an international agreement's applicability or prohibition, courts have discretion to "determin[e] when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)." *Id.* at 1016. "[A] method of service of process must also comport with constitutional notions of due process." *Id.* "To meet this requirement, the method of service crafted by the district court must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 1016-17 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Plaintiff moves the Court for leave to serve Defendants by email because service through the Hague Convention would cause substantial delay and expense, and because "service by

email, Alibaba messaging, and Amazon seller messaging is reasonably calculated to provide actual notice." Dkt. 5 at 2 (emphasis removed). Plaintiff states that service through the Hague Convention "would require translation of all pleadings into Mandarin and would likely take several months, with no guarantee of delivery or confirmation." *Id*. at 4. He asserts that the "delay would materially prejudice [his] ability to obtain timely relief." Dkt. 5-1, ¶8. He further asserts that each Defendant maintains active, monitored electronic contact addresses through which they conduct regular business with buyers in the United States, that he identifies at least two verified electronic communication channels for each Defendant used to conduct business and to communicate with customers, and that he has personally communicated directly with all Defendants via email, Alibaba chat messaging, and Amazon seller chat messaging. Dkt. 5 at 2-3; *see also* Dkts. 1-2, Exs. B-F, K.

Under Rule 4(f)(3), the Court must first consider whether an international agreement applies and, if so, whether it prohibits service by e-mail. The Court, as discussed below, finds both that the Hague Convention applies and that it prohibits service by email.

The Hague Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Convention art. 1. However, the Hague Convention expressly "shall not apply where the address of the person to be served with the document is not known." *Id*. The Supreme Court has recognized that "compliance with the [Hague] Convention is mandatory in all cases to which it applies" in view of the Article 1 exclusivity provision and the Convention's purpose. *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699, 705 (1988) (citations omitted) (construing Article 1's language as "mandatory") (citing *Société Nationale Industrielle*

ORDER RE: PENDING MOTIONS - 4

*Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa,* 482 U.S. 522, 534 & n.15 (1987));[1] *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) (citing *Schlunk*, 486 U.S. at 699).

Both China and the United States are signatories to the Hague Convention. *See* Status Table, Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited Feb. 2, 2026). Also, because Plaintiff identifies physical addresses for all named Defendants, *see, e.g.*, Dkts. 1-2, Ex. B, there is no basis for concluding that the addresses of Defendants are not known. Accordingly, the Hague Convention applies.

Because the Hague Convention applies, alternative service by e-mail can only be granted pursuant to Rule 4(f)(3) if it would not violate the Convention. The Court looks to the "approved methods of service" specified by the Hague Convention for that insight, cognizant that the treaty "'pre-empts inconsistent methods of service' wherever it applies." *Water Splash, Inc.*, 581 U.S. at 273 (quoting *Schlunk*, 486 U.S. at 699).

---

[1] In *Société Nationale*, the Supreme Court construed language in the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Evidence Convention") as making available optional, as opposed to mandatory, procedures. The Supreme Court reached that conclusion by contrasting the Hague Evidence Convention's language with that of the Hague Service Convention, reasoning that

> the Hague Conference on Private International Law's omission of mandatory language in the preamble [of the Hague Evidence Convention] is particularly significant in light of the same body's use of mandatory language in the preamble to the Hague Service Convention[.] . . . Article 1 of the Service Convention provides: "The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." . . . [T]he Service Convention was drafted before the Evidence Convention, and its language provided a model exclusivity provision that the drafters of the Evidence Convention could easily have followed had they been so inclined. Given this background, the drafters' election to use permissive language instead is strong evidence of their intent.

*Société Nationale Industrielle Aérospatiale,* 482 U.S. at 534 n.15 (citations omitted).

ORDER RE:  PENDING MOTIONS - 5

The Hague Convention delineates several approved service methods. It requires each State Party to establish a central authority to receive service requests from abroad, arrange for service via a method authorized under, or compatible with, its internal law, and provide certificates of service. *See* Hague Convention arts. 2, 5–6. Service may also be effected through diplomatic or consular agents, *see id.* arts. 8–9, or by other means agreed to by State Parties, *see id.* art. 11. State Parties may also permit, pursuant to their domestic laws, service from abroad upon individuals in their territory via methods not authorized by the Hague Convention. *See id.* art. 19. Finally, "[p]rovided the State of destination does not object" the Hague Convention does "not interfere with . . . the freedom to send judicial documents, by postal channels, directly to persons abroad[.]" *Id.* art. 10(a).

E-mail is not a service method expressly provided for by the Hague Convention. As it was drafted before e-mail existed, that omission is not surprising. Courts have split on whether the Article 10(a) "freedom to send judicial documents[] by postal channels[]" nonetheless encompasses electronic channels, including e-mail, and the scope of State Parties' objections to Article 10. *Id.* art. 10(a). Some courts, in view of the Hague Convention's exclusivity, have held e-mail is not a permissible method of service where State Parties have objected to Article 10 nor a method to which signatories must affirmatively object. *See, e.g.*, *Amazon.com Inc. v. Robojap Techs. LLC*, No. C20-694-MJP, 2021 WL 4893426, at \*2 (W.D. Wash. Oct. 20, 2021) ("If a form of service is not expressly permitted by the Convention, then it is otherwise impermissible and prohibited. . . . Because the Convention does not expressly permit email service, India had no reason or need to affirmatively reject it for it to be considered prohibited."); *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 983 (N.D. Cal. 2020) ("The Convention[] . . . doesn't simply offer options for service abroad[] . . . that plaintiffs

can resort to or not at their discretion. Rather, unless an exception applies, the Convention-delineated methods of service (along with the methods that countries unilaterally and bilaterally agree to under Articles 11 and 19) are exclusive. . . . China affirmatively objected to service 'by postal channels' because service 'by postal channels' is expressly permitted by the Convention, absent objection. The same is not true of service by e-mail. The Convention doesn't offer service by e-mail as an option, so there was no reason for China to affirmatively object to it.").  Other courts have determined that the Hague Convention and State Parties' Article 10(a) objections' silence as to e-mail service indicates it is not explicitly prohibited and thus can be authorized under Rule 4(f)(3).  *See, e.g., Akerson Enter. LLC v. Shenzhen Conglin E-Com. Co., Ltd.*, C24-0506, 2024 WL 3510934, at *3 (W.D. Wash. July 23, 2024) ("Given the lack of binding precedent on this issue and the Court's agreement with the majority view of courts in this district, the Court finds that e-mail service to a foreign defendant in China is allowed under Rule 4(f)(3) because the Hague Convention does not expressly prohibit it.").

Recently, both this Court, in *Dongguan Naquan E-Commerce Co., Ltd. v. Binovo Manufacturing Co., Ltd.*, C25-1169-SKV, slip op. (W.D. Wash. Aug. 15, 2025), and the Second Circuit, in *Smart Study Co., Ltd v. Shenzhenshixindajixieyouxiangongsi*, No. 24-313, ___ F.4th ___, 2025 WL 3672740, at *4-6 (2d Cir. Dec. 18, 2025), concluded that service by email on defendants in China is prohibited by the Hague Convention.  The Court again finds as such and explains the basis for that conclusion.[2]

---

[2] In *Dongguan Naquan*, the Court noted the split in this district's decisions and found the first approach described above more persuasive for reasons previously articulated by the Honorable Marsha J. Pechman.  *Dongguan Naquan E-Commerce Co., Ltd.*, C25-1169-SKV, slip op. at 6 n.4.  In *Robojap*, Judge Pechman explains that decisions concluding that the Hague Convention does not prohibit e-mail service on residents of countries with Article 10(a) objections

ORDER RE:  PENDING MOTIONS - 7

In July 2024, the Special Commission on the Practical Operation of the 1965 Service, 1970 Evidence, and 1980 Access to Justice Conventions ("SC") issued Conclusions and Recommendations resolving the ambiguity surrounding e-mail service.[3]  *See* Special Commission on the Practical Operation of the 1965 Service, 1970 Evidence and 1980 Access to Justice Conventions, *Conclusions and Recommendations (C&R)* ¶ 105 (July 2024) [hereinafter 2024 Conclusions and Recommendations], https://assets.hcch.net/docs/6aef5b3a-a02c-408f-8277-8c995d56f255.pdf.  The "SC noted that Article 10(a) includes transmission and service by e-mail, insofar as such method is provided by the law of the State of origin and permitted under the law of the State of destination."  *Id.*  The Commission further noted "that a Contracting Party, rather than filing a blanket opposition to the use of postal channels under Article 10(a), is allowed to make a qualified declaration stating the conditions in which that Contracting Party

---

generally consider only the broad language in *Rio* [*Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002)] about Rule 4(f)(3) without any analysis of the structure and nature of the Hague Convention. As the Ninth Circuit expressly pointed out in *Rio*, its decision did not resolve the question of whether email service is permitted under Rule 4(f)(3) when the Hague Convention also applies. Yet many . . . decisions . . . rely on *Rio* as having somehow decided this issue. This renders them unpersuasive. Similarly, these decisions fail to acknowledge or reconcile their determinations with the Supreme Court's explanation that when the Convention applies, it provides the exclusive and limited methods of completing international service.

*Robojap*, 2021 WL 4893426, at *3 (internal citations omitted).  This Court agrees.  After all, "when there is tension between a federal statute or federal rule, on the one hand, and a treaty like the Convention, on the other, the two are to be interpreted 'to avoid conflicts.'"  *Facebook*, 480 F. Supp. 3d at 985–86 (quoting *Saleh v. Bush*, 848 F.3d 880, 891–92 & n. 9 (9th Cir. 2017)).  In this Court's view, the Hague Convention's exclusivity cannot be squared with a reading of Rule 4(f)(3) that grants license to employ any service methods on which the Hague Convention is silent.  *Cf. Schlunk*, 486 U.S. at 705 ("[W]e do not think that this country, or any other country, will draft its internal laws deliberately so as to circumvent the Convention in cases in which it would be appropriate to transmit judicial documents for service abroad.").

[3] The Special Commission is a body that meets "to review the practical operation of" the Hague Convention and "adopt[s] Conclusions & Recommendations . . . aimed at promoting best practices and improving [the Hague Convention's] operation."  *Post Convention Work*, Hague Conference on Private International Law, https://www.hcch.net/en/projects/post-convention-projects (last visited Feb. 2, 2026).

ORDER RE:  PENDING MOTIONS - 8

accepts incoming transmissions[.]" *Id.* ¶ 107.  In view of State Parties' recent consensus on Article 10(a)'s scope, the Hague Convention is best read as *not* barring sending of service documents directly to persons abroad via e-mail if permitted under the laws of the states of origin and destination, *unless* the state of destination objects.  *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 12 (2014) (emphasizing courts' "responsibility to read . . . treat[ies] in a manner consistent with the *shared* expectations of the contracting parties." (quoting *Olympic Airways v. Husain,* 540 U.S. 644, 650 (2004))); *Water Splash*, 581 U.S. at 283 (looking to the SC's Conclusions and Recommendations to interpret Article 10's scope); *Brockmeyer v. May*, 383 F.3d 798, 803 (9th Cir. 2004) (looking to the handbook summarizing SC meetings to interpret Article 10's scope).

China, the putative destination State here, filed a blanket objection to Article 10(a).  *See Declaration/Reservation/Notification*, Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/notifications/ ?csid=393&disp=resdn (last visited Feb. 2, 2026) (China "oppose[s] the service of documents in the territory of the People's Republic of China by the methods provided by Article 10 of the Convention.").  China has not narrowed its objection since the SC's 2024 meeting, in which it participated, or the publication of the 2024 Conclusions and Recommendations.  *See* 2024 Conclusions and Recommendations at 1 n.1.  The Court therefore construes China's objection to cover service by e-mail.

Plaintiff acknowledges China's Article 10 objection, but asserts that service by email is permissible because China has not expressly objected to service by electronic means.  Dkt. 5 at 5.  Plaintiff also notes that courts in this district have approved email service to defendants in China.  *Id*.  However, neither Plaintiff's assertion, nor the existence of varying decisions from courts in this district provides a basis for altering the Court's conclusion.  The Court, instead and

for the reasons discussed above, concludes that service by email on Defendants in China is prohibited by the Hague Convention.

The Court further notes that, even if the Hague Convention were not applicable or some exception cognizable, Plaintiff fails to make a showing sufficient to justify alternative service under Rule 4(f)(3).  For the Court to authorize alternative service, a plaintiff must "demonstrate that the facts and circumstances of the present case necessitate[] the district court's intervention." *Rio Props.*, 284 F.3d at 1016.  Courts consider a variety of factors when assessing need, "including whether the plaintiff identified a physical address for the defendant, whether the defendant was evading service of process, . . . whether the plaintiff had previously been in contact with the defendant," and efforts taken to identify a physical address for the defendant. *Dongguan Zhouda Tech. Co. v. Dai*, C25-0536-TL, 2025 WL 1772099, at *2 (W.D. Wash. June 26, 2025) (quoting *Rubie's Costume Co. v. Yiwu Hua Hao Toys Co.*, C18-1530, 2019 WL 6310564, at *2 (W.D. Wash. Nov. 25, 2019)); *see Cong v. Zhao*, C21-1703-TL, 2022 WL 3447531, at *2 (W.D. Wash. Aug. 17, 2022) (denying alternative service by e-mail where the "[p]laintiff ha[d] not alleged that [the d]efendant's physical address [was] unknown after making reasonable efforts to find an alternative address[] and . . . ha[d] not documented any other efforts to find a physical address to serve Defendant.").

Here, Plaintiff has physical addresses for Defendants and describes no efforts to serve them, nor any facts suggesting they are attempting to evade service.  Plaintiff explains his request for service by email as based on the expenses he would incur and the delay that would result from service under the Hague Convention.  *See* Dkt. 5; Dkt. 5-1, ¶8.  However, the desire to avoid expense and delay, while understandable, does not justify alternative service.  *See, e.g., Molloy v. Triwin, Inc.*, C23-4317, 2023 WL 11979757, at *2 (C.D. Cal. Sept. 22, 2023) ("The

ORDER RE:  PENDING MOTIONS - 10

Hague Convention exists for a reason. If a plaintiff could avoid its effect simply because of an assertion— justified or not—that service pursuant thereto would be impractical, expensive, or would take time, it would be little more than an internationally agreed-upon dead letter."); *Amazon.com, Inc. v. Tian*, No. C21-0159-TL, 2022 WL 486267, at *3 (W.D. Wash. Feb. 17, 2022) ("Rule 4's various requirements for service of process are more than mere 'technicalities,' and the desire for expedience and efficiency alone is not sufficient to justify alternative service.") (internal and other citations omitted). The Court therefore would not, under these circumstances, find intervention necessary. For this reason and for the reasons stated above, Plaintiff's motion for alternative service is denied.

B.    Motion to Seal

"There is a strong presumption of public access to the court's files." Local Civil Rule (LRC) 5(g). However, the presumption is not absolute and may be overcome. *See Kamakana v. City and Cty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). The party seeking to overcome the strong presumption in favor of public access must "'articulate[] compelling reasons supported by specific factual findings' that outweigh the general history of access and the public policies favoring disclosure[.]" *Id*. at 1178-79 (alteration in original; internal citations omitted).[4]

---

[4] The Ninth Circuit "'carved out an exception'" to the compelling reasons standard for materials filed in connection with non-dispositive motions that are only "tangentially related to the underlying cause of action." *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097-99 (9th Cir. 2016) (quoted and cited sources omitted). Such records may be sealed upon a "particularized showing" of good cause. *Kamakana*, 447 F.3d at 1180 (quoted source omitted). While the Ninth Circuit has not specified the standard applicable to a complaint, courts in the Ninth Circuit have in many instances applied the compelling reasons standard to pleadings. *See, e.g., Benanav v. Healthy Paws Pet Ins. LLC*, C20-0421-LK, 2023 WL 8648962, at 5, n.5 (W.D. Wash. Dec. 14, 2023); *In re Zillow Grp., Inc. S'holder Derivative Litig.*, C17-1568-JCC, 2019 WL 3428664, at *1 (W.D. Wash. July 30, 2019). *See also Carroll Shelby Licensing, Inc. v. Halicki*, C20-1344, 2020 WL 10574168, at *1 (C.D. Cal. Sept. 11, 2020) (applying compelling reasons standard to motion to seal portions of complaint and an attachment, and stating: "Because a complaint is 'the foundation of a lawsuit,' it cannot be described as only tangentially related to the underlying cause of action.") (citations omitted). The Court here, like Plaintiff, *see* Dkt. 4, applies the compelling reasons standard.

The Court, in turn, must balance the competing interests of the public and the party seeking to restrict access, and must base a decision to keep records under seal "on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id*. at 1179 (quoted source omitted). "What constitutes a compelling reason is best left to the sound discretion of the trial court." *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (cleaned up and quoted source omitted).

In addition, under this Court's Local Civil Rules, the party seeking to keep materials under seal must provide "a specific statement of the applicable legal standard and the reasons for keeping a document under seal," including explanation of "i. the legitimate private or public interests that warrant the relief sought; ii. the injury that will result if the relief sought is not granted; and iii. why a less restrictive alternative to the relief sought is not sufficient." LCR 5(g)(3)(B). "Evidentiary support from declarations must be provided where necessary." *Id.*

Plaintiff seeks leave of Court to file nine exhibits attached to his Complaint under seal, *see* Dkts. 4 & 4-1 (addressing Exhibits B-G, K, M-N to Dkts. 1 & 2), described by Plaintiff in a declaration as follows. "Exhibits B-F contain unredacted business-license documents, Chinese [SAMR] filings, Qichacha reports, Unified Social Credit Codes, registry numbers, physical addresses, email addresses, and other internal corporate identifiers for the foreign defendants." Dkt. 4-1, ¶2. Plaintiff asserts that these documents "include sensitive information not ordinarily public in the United States and which could expose individuals or companies to privacy and security risks if filed unsealed." *Id.* "Exhibit G includes proprietary product photographs, teardown images, detailed claim-chart analyses, and comparison images of Plaintiff's patented device." *Id.*, ¶3. Plaintiff asserts that these materials "reveal internal structure, confidential engineering details, and litigation strategy used to map the accused products to each claim

limitation[,]" and that "[p]ublic disclosure would provide foreign sellers with the ability to alter their products or adjust their listing to evade enforcement." *Id*. "Exhibits K and M contain private communications, including email addresses, internal Alibaba and Amazon messaging accounts, and contact information that is not publicly listed[,]" as well as "screenshots that display usernames, message IDs, timestamps, internal account identifiers, and other personally identifiable information." *Id*., ¶4. Finally, "Exhibit N includes private communications and non-public USPTO application numbers and other sensitive data tied to foreign sellers." *Id*., ¶5.

Plaintiff asserts that the Complaint and publicly filed redacted exhibits provide the full substance of his claims, that he narrowly limited the sealed materials to only those portions containing confidential business records, private contact information, technical teardown images, or detailed claim-chart analysis, and that all "non-sensitive content is filed publicly in the redacted versions. *Id*., ¶7. He argues that, consistent with LCR 5(g), compelling reasons support sealing the identified exhibits in order to protect confidential and sensitive information from unnecessary public exposure. He also argues that redaction of the exhibits would be "impracticable without rendering the exhibit unintelligible[,]" and states that he would provide unredacted versions to any appearing Defendant and consent to a protective order if deemed appropriate. Dkt. 4 at 4. The Court finds that, with one exception discussed below, Plaintiff fails to satisfy the compelling reasons standard.

Plaintiff here asserts that information and records associated with the business entities he sues in this matter and his communications with those entities and third parties, *see* Dkts. 1 & 2, Exs. B-F, K, M-N, are not appropriate for public disclosure because they contain commercially sensitive, private, confidential, and/or personally identifiable information, and that disclosure of these materials could create "privacy and security risks" for both those entities and various

ORDER RE: PENDING MOTIONS - 13

individuals.  Dkt. 4 at 3; Dkt. 4-1, ¶2.  These assertions are not borne out by review of the materials at issue.  *See id*.  Most, if not all, of the business information and records included in Exhibits B-F, K, M, and N appear to be accessible to the public.  Nor is it clear that Plaintiff's communications with Defendants, their employees, or third parties, including Amazon and Alibaba, as contained in Exhibits K, M, and N, contain the type of private information the Court might find properly restricted from public view.  *See, e.g.*, *B.F. v. Amazon.com, Inc.*, C19-0910-RAJ-MLP, 2019 WL 4597492, at *2 (W.D. Wash. Sept. 23, 2019) (allowing for redaction of the email addresses of the minor plaintiffs' guardians in order to protect their privacy interest and prevent exposure to harm or identity theft).

As noted above, a party seeking to file materials under seal is required to explain the interest warranting relief, the injury that will result, and why a less restrictive alternative to sealing the documents is not sufficient.  LCR 5(g)(3)(B).  Plaintiff has not sufficiently explained how or why the materials in Exhibits B-F, K, M, and N should be considered commercially sensitive or private, how Defendants or others could be harmed by their disclosure, or why a less restrictive alternative, such as targeted redactions, would not suffice.  His bare assertions as to the content of the materials, the risks posed by their disclosure, and the absence of any alternative does not provide the necessary compelling reason to override the public's interest in disclosure.  *See Kamakana*, 447 F.3d at 1182 (conclusory statements about the content of documents – "that they are confidential" and that their disclosure would "in general" cause harm – did "not rise to the level of 'compelling reasons" sufficiently specific to bar the public access to the documents.").  These exhibits are therefore not properly filed under seal.

Plaintiff offers a greater showing in relation to Exhibit G.  This exhibit contains a "Claim Chart Showing Infringement of Claim 1 of US 9,468,791."  Dkts. 1 & 2, Ex. G.  Plaintiff

ORDER RE:  PENDING MOTIONS - 14

describes this document as containing proprietary engineering information, internal teardown photographs of Plaintiff's patented device, and detailed claim-chart mappings and analyses that foreign sellers could use to alter their products or adjust their listings to evade infringement. *See* Dkt. 4 at 2-3; Dkt. 4-1, ¶3. Plaintiff asserts that the public filing of this document would also unnecessarily disclose litigation strategy at the earliest stage of these proceedings. *See id.*

The potential that a court record could be used as a source of "business information that might harm a litigant's competitive standing[]" may serve as a compelling reason to allow the filing of a document under seal. *See Ctr. for Auto Safety*, 809 F.3d at 1097 (quoting *Nixon v. Warner Commnc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)). *See also Apple, Inc. v. Samsung, Elecs. Co., Ltd.*, 727 F.3d 1214, 1221 (9th Cir. 2013) ("One factor that weighs in favor of sealing documents is when the release of the documents will cause competitive harm to a business."). The Court finds that Plaintiff has made a sufficient showing, at least at this juncture, that Exhibit G contains business information the disclosure of which has the potential to harm Plaintiff's competitive standing. The Court also finds that a less restrictive alternative to sealing this document would not be practical. The Court, as such, finds a compelling reason to override the public's interest in disclosure to allow the filing of Exhibit G under seal. The Court, however, notes that, given the early stage of these proceedings, this issue could be revisited, and that this exhibit would, as Plaintiff appears to concede, likely be subject to a protective order.

## CONCLUSION

For the reasons discussed above, the Court DENIES Plaintiff's Motion for Leave to Serve Defendants by Alternative Means Under Rule 4(f)(3), Dkt. 5, and GRANTS in part and DENIES in part Plaintiff's Motion to Seal Exhibits to the Complaint, Dkt. 4. Docket Number 2, which

ORDER RE: PENDING MOTIONS - 15

includes Exhibit G, shall remain under seal until further order of the Court.  Plaintiff is ORDERED to file a public version of Exhibits B-F, K, M, and N within **fourteen (14) days** from the date of this Order.

Dated this 3rd day of February, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER RE:  PENDING MOTIONS - 16